## L. HERTZ *v.* W. H. WILDER.

Although a party may sometimes be permitted to allege and prove that the form of a legal contract has been used to cover a corrupt or flagitious transaction, yet such an allegation puts the party who makes it in a position so questionable, that the judge is not only authorized, but obliged to sift with the greatest care the evidence adduced in its support, and only to give his credence when the evidence is so complete that it forces itself upon the conviction with the power of demonstration.

APPEAL from the Fourth District Court of New Orleans, *Reynolds,* J.
*H. D. Ogden,* for plaintiff and appellant.   *Durant & Horner,* curators *ad hoc,* for defendant.

BUCHANAN, J.   This is a suit instituted upon five several promissory notes made by defendant in favor of plaintiff, at different dates, ranging from July 20th, 1852, to May 13th, 1854, and maturing respectively from January, 1853,

HERTZ
*v.*
WILDER.

to August, 1854. The suit was instituted by attachment on the 21st December, 1854, the defendant being then a fugitive from justice, having escaped from the custody of the marshal, after conviction of the crime of uttering forged land warrants, knowing them to be forged, in the Circuit Court of the United States holding session in New Orleans. The defence, put in by a curator, *ad hoc*, appointed by the Court, is want of consideration.

In support of this defence, the curator *ad hoc* of defendant has offered a certain document purporting to be signed by plaintiff, in the nature of a counter letter. This document bears date the 25th September, 1854, and, after describing the five notes herein sued upon, in detail, proceeds to declare as follows: "Which said notes have been this day delivered to me by the said *Wilder*, and for which no value or consideration has been by me given—the first four of said notes having been anti-dated to correspond with certain old checks in my possession, drawn on the days and years above stated, for the amounts above stated; said checks being made payable to bearer on the house of *Judson & Co.*, and given at those times to some persons whom I cannot recollect, or drawn in the way of business. The above notes are given for a certain purpose, and I agree to return said notes to said *Wilder* or his agent after the termination of the proceedings now pending in the United States Circuit Court for Louisiana, entitled "*The United States* v. *William H. Wilder* and *Philip Prendergast.*" The evidence is very conflicting as to the genuineness of the signature of plaintiff to this document. Three witnesses, *Delgado*, *Armor*, and *Solomon*, testify to an acquaintance with the handwriting of plaintiff, and that, in their opinion, the signature in question is his. On the other hand, four witnesses, *Montross*, *Bartlett*, *Newman*, and *McCormick*, who profess to be well acquainted with plaintiff's handwriting, declare their conviction that the signature to the document B. was not written by him. In this discrepancy of testimony, it would scarcely be safe to pronounce the document to be genuine, coming, as it does, from the possession of a convicted forger. The appellee now relies upon the testimony of a witness, who is the brother-in-law of defendant, to sustain the plea of want of consideration. This testimony consists of confidential communications made by *Wilder* to the witness, out of the presence of the plaintiff, and a conversation said to have taken place between plaintiff and defendant. As to *Wilder's* declarations to the witness, out of plaintiff's presence, a bill of exceptions has been reserved. And we are of opinion that they were improperly admitted in evidence. There remains the evidence given by this witness of a conversation said to have taken place between plaintiff and defendant on the evening previous to the trial of the latter in the United States Court. This portion of the witness' deposition is as follows: "Witness was going home the evening before *Wilder's* trial, and at the corner of Exchange Alley and Customhouse street he met *Wilder* and *Hertz* conversing together. Deponent asked *Wilder* to go home, and accompanied him home. Witness heard *L. Hertz* say he would to-morrow come into court and swear to the amount of the notes which *Wilder* had given him, *Hertz*. *Wilder* was apparently pressing *Hertz* for a receipt of the notes. *Hertz* said it did not matter, as he would destroy them immediately after the trial. *Wilder* told *Hurtz* he had either lost or mislaid the receipt *Hnrtz* had given him, and, in case of any accident either to *Hertz* or himself, he would like to have a receipt. Deponent pressed *Wilder* to go home as it was getting late, and they then separated, *Hertz* remarking that he would next morning be in court, and fulfil his promise."

If this witness is to be believed, the plaintiff has admitted the existence of some such document as that which has been the subject of our preceding remarks. But we should not lose sight of the fact that *Wilder* is defending this case upon an allegation of his own criminality. He avers, in substance, that the notes sued upon were part of a scheme of fraud and perjury, concocted between himself and plaintiff, for the purpose of screening himself from a criminal prosecution which has terminated in a conviction. "Nemo allegans turpitudinem suam audiendus est," is good law, no less than sound morality. The maxim, "ex turpi causa non oritur actio," is, however equally orthodox. And it may well be asked, how can the latter maxim receive a practical application unless the party defendant be sometimes allowed to allege and to prove his own turpitude? The only mode of solving the dilemma strikes us to be, that, although a regard to the purity of justice compels the admission of allegation and proof that the form of a legal contract has been used to cover or corrupt a flagitious transaction, yet such an allegation puts the party who makes it in a position so questionable, that the judge is not only authorized but obliged to sift with the greatest care the evidence adduced in its support, and only to give his credence when the evidence is so complete that it forces itself upon the conviction with all the power of demonstration. Now, it seems to require explanation in what manner the notes of *Wilder*, in the hands of *Hertz* produced as a witness on the trial of *Wilder*, and the false testimony of *Hertz* that *Wilder* was really indebted to him in the amount of those notes, could have benefited *Wilder* in the defence of a charge against him, at the suit of the United States, for having feloniously and knowingly uttered forged land warrants. The witness, *Palmer*, gives no satisfactory explanation on this point, neither does the record show anything that passed upon the trial of *Wilder* on that charge. It informs us, indeed, that *Wilder* was tried and convicted; but whether *Hertz* gave any evidence at all on the trial, and if so, what bearing his evidence had on the case, we are not informed. Unaided by evidence, we have been unable to perceive any reasonable motive for the alleged fabrication of simulated notes, and the subornation of false testimony to prove them real.

On the whole, as we sustain the plaintiff's bill of exceptions to testimony; as the signature to document B has not been proved to our entire satisfaction; and as we think it probable that further light may be thrown on this very singular case by the production of further evidence, we have thought it advisable to remand the cause for trial before a jury.

It is therefore adjudged and decreed, that the judgment of the Court below be reversed, and that the case be remanded for trial before a jury, and in other respects to be proceeded in according to law: the appellee to pay costs of appeal.